**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ASIF JAVAID,** | : | |
| | : | |
| **Plaintiff** | : | **Civil No. 4:11-CV-1084** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **ELLIOTT B. WEISS,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION AND ORDER

## I.    INTRODUCTION

In this case, which he characterizes as "a professional liability action," Plaintiff Asif Javaid has sued Elliott B. Weiss, his former lawyer, alleging that Mr. Weiss is liable for professional malpractice and breach of contract.  It appears that Plaintiff's claims arose out of events which transpired between three and nine years ago: a 2002 loan transaction that resulted in 2008 in Mr. Javaid, as a guarantor on the loan, having a confessed judgment entered against him for $865,910.53 – an amount that was later reduced to $366,008.79, after Mr. Weiss commenced proceedings in the Court of Common Pleas for Lycoming County in an effort to open or strike the judgment.  Mr. Weiss was engaged as Mr. Javaid's counsel both during the original 2002 loan transaction, and again later in 2008 when he endeavored to have the confessed judgment set aside.

As explained below, Mr. Javaid has alleged that Mr. Weiss failed adequately to explain the meaning and significance of a confession-of-judgment clause contained in the 2002 loan agreement, and later, in 2008, failed to effectively represent Mr. Javaid in proceedings that Mr. Elliott initiated in an effort to strike or open the judgment that had been entered against Mr. Javaid following default on the loan. The action was filed in federal court on the basis of diversity of citizenship, as Mr. Javaid is a citizen of the state of New York and alleges damages in excess of $75,000, and Mr. Weiss is a citizen of Pennsylvania who maintains a law practice in Williamsport, Pennsylvania.

Defendant has moved to dismiss the complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. Defendant contends that Plaintiff's claims are inadequately pled, fail under Pennsylvania substantive law, and are otherwise time-barred. In support of its motion, Defendant has provided not only legal argument, but also numerous documents that Plaintiff filed in state-court proceedings relating to the loan transaction and the subsequent judgment entered against him, which Defendants argue make absolutely clear that Plaintiff's claims are meritless. Defendants also urge the Court to find that at least some claims are time-barred by the applicable statute of limitations. Plaintiff has responded by generally arguing that his complaint is sufficient, asserting that the

liberal pleading rules should permit the complaint to survive, and arguing that the Court is not permitted to consider application of the statute of limitations on a motion to dismiss.

Upon careful consideration, and taking the allegations pleaded as true for purposes of this opinion, we find that Plaintiff's complaint, as currently drafted, is too speculative, vague, and conclusory to survive Defendant's motion to dismiss, and falls well short of what is now required of a complaint following the Supreme Court's decisions in  Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal  –U.S.–, 129 S.Ct. 1937 (2009) in order to state a claim upon which relief may be granted.   Furthermore, we conclude that Defendants have raised substantial questions about whether some or all of the claims raised in the complaint are time-barred by the two-year statute of limitations applicable to legal malpractice claims under Pennsylvania law.

Because of these pleading deficiencies and our conclusion that, as currently pled, the complaint attempts to seek relief for time-barred claims, we will grant the motion to dismiss without prejudice to Plaintiff being given a final opportunity to file an amended complaint to address the deficiencies identified in this opinion. Thus, by this ruling, we give the plaintiff a final opportunity to amend his claim to properly articulate a cause of action within the period of the statute of limitations.

## II.   **FACTUAL BACKGROUND**[1]

In 2002, Plaintiff Asif Javaid retained the legal services of attorney Elliott B. Weiss in connection a loan transaction between ARM Hospitality, Inc. ("ARM"), as borrower, and BLC Capital Corp. ("BMC") as lender.  In this transaction, BLC loaned ARM $700,000, which was secured by a stock pledge from ARM's shareholders, and by a personal guaranty by Javaid, who at that time was ARM's president.  The express terms of the guaranty that Javaid executed as part of this transaction authorized the lender to confess judgment against Javaid for any unpaid part of the note.

In the complaint, Plaintiff claims that he retained Mr. Weiss to serve as his counsel in connection with this loan transaction, and that Mr. Weiss "explicitly and implicitly agreed to provide competent legal services to [Mr. Javaid] for all services which he was contracted to provide."  (Compl., ¶ 6.) Plaintiff does not articulate the precise nature and scope of the legal services that he claims Mr. Weiss was contracted to provide, but it appears that he engaged Mr. Weiss to provide him with legal counsel at the time the loan transaction was being entered into, and again later in 2006 and 2008 when proceedings were commenced in the Court of Common Pleas following

---

[1] The background to this opinion is taken from allegations set forth in Plaintiff's complaint, as well as from documents that were originally attached to court filings in other proceedings that Defendants have attached to their motion to dismiss, and which have direct bearing on Plaintiff's claims in this action.

an event of default under the loan and the entry of a confessed judgment against Mr.

Javaid.  According to Mr. Javaid, at the time the loan transaction was entered into, Mr.

Weiss failed to explain the existence or significance of a confession of judgment

clause that was a part of the loan guaranty, and further failed to explain that as part of

the guaranty, Mr. Javaid was waiving his right to notice and a hearing upon an event

of default under the loan agreement.  (Doc. 1, Compl., at ¶ 9.)

After ARM defaulted on its loan obligations, SPCP Group, Inc., the assignee

of BLC's rights under the loan, commenced foreclosure proceedings against the real

property that secured the note.  On February 1, 2008, the subject property was sold at

a sheriff's sale to Little League Baseball, Inc. for $588,500.00.  On February 6, 2008,

the Court of Common Pleas of Lycoming County entered judgment in favor of SPCP

Group, Inc. in the amount of $859,910.53.  (Doc. 12, Ex. B.)

Less than one month later, on March 3, 2008, Plaintiff filed a petition to strike

or open the confessed judgment.  (Doc. 12, Ex. C.)  Plaintiff engaged Mr. Weiss to file

this petition on his behalf.  In the petition, Plaintiff argued that the attorney's fees

claimed by SPCP Group were unreasonably excessive; that Plaintiff was entitled to

a credit equal to the sale price of the subject property; and that the Deficiency

Judgment Act barred the SPCP Group from recovering from Plaintiff.  (Id.)  On April

22, 2008, the Court of Common Pleas denied the petition, but reduced the judgment

to include a credit in the amount of $515,675.92 resulting from the sale of the real property that had secured the loan.  (Doc. 12, Ex. D.)  Plaintiff appealed to the Pennsylvania Superior Court, which affirmed the Court of Common Pleas's order in an opinion issued on November 10, 2009.  (Doc. 12, Ex. B.)

While Plaintiff's appeal before the Pennsylvania Superior Court was pending, SPCP Group took steps to enforce the judgment against Plaintiff in New York state. Thus, on December 12, 2008, SPCP Group filed a complaint in the Supreme Court of the State of New York, Dutchess County, seeking enforcement.  (Doc. 12, Ex. E.) Plaintiff, through New York counsel, filed a verified answer in response to the complaint on January 29, 2009.  (Doc. 12, Ex. F.)  SPCP Group proceeded to move for summary judgment on its enforcement action.  (Doc. 12, Ex. G.)  Plaintiff, who was at this time apparently represented by other counsel in New York,  did not respond to this motion, and on July 22, 2009, judgment was entered against Plaintiff in the amount of $366,008.79, plus costs and interest dating from December 12, 2008. (Doc. 12, Ex. H.)

Plaintiff commenced the instant action in this Court on June 6, 2011.  (Doc. 1.) Defendant filed the instant motion to dismiss on August 19, 2011, and after being granted an enlargement of time, filed a brief in support of the motion on September 23, 2011.  (Docs. 7, 12.)  Plaintiff filed a brief in opposition to the motion on October

10, 2011, to which Defendant replied on October 21, 2011.  (Docs. 13, 14.)  The

motion is now ripe for disposition, and for the reasons that follow it will be granted.

## III.   <u>STANDARD OF REVIEW</u>

Rule 12(b)(6) provides that a complaint should be dismissed for "failure to state

a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  With respect to

this benchmark standard for assessing the legal sufficiency of a complaint, the United

States Court of Appeals for the Third Circuit has recently described the evolving

standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in
> recent years. Beginning with the Supreme Court's opinion in <u>Bell</u>
> <u>Atlantic Corp. v. Twombly,</u> 550 U.S. 544 (2007) continuing with our
> opinion in <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir.
> 2008)]and culminating recently with the Supreme Court's decision in
> <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have
> seemingly shifted from simple notice pleading to a more heightened
> form of pleading, requiring a plaintiff to plead more than the possibility
> of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may

be granted, the Court must accept as true all allegations in the complaint and all

reasonable inferences that can be drawn therefrom are to be construed in the light

most favorable to the plaintiff.  <u>Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.</u>, 20

F.3d 1250, 1261 (3d Cir. 1994).  However, a court "need not credit a complaint's bald

assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).  As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.  In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss.  In Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. at 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949.  Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Pension Benefit Guaranty Corp. v. White Consol. Indus., Inc., 998 F.2d

1192, 1196 (3d Cir. 1993) (citations omitted); see also Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). Thus, the court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." Pension Benefit, 998 F.2d at 1196. In addition, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment."). However, a court may not rely on other parts of the record in rendering a decision on a motion to dismiss. Jordan, 20 F.3d at 1261.

As will be discussed below, guided by the foregoing considerations, we find that Plaintiff's complaint falls short of what these pleading standards require. Indeed, Plaintiff relies almost exclusively on allegations that amount to little more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," and he includes almost no factual allegations of any substance of any kind to support his legal theories. However, following Iqbal and Twombly, to

pass muster under Rule 8 a complaint must "describe 'enough facts to raise a reasonable expectation that discovery will reveal evidence of' each necessary element of the claims alleged" in the complaint.  <u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 123 (3d Cir. 2010).  Judged against these pleading standards, we find, as a threshold matter, that Plaintiff has failed adequately to plead a cause of action for legal malpractice within the period of the statute of limitations.

IV.   **<u>DISCUSSION</u>**

   A.   **The Nature of Plaintiff's Legal Malpractice Claims**

   In the complaint, Plaintiff makes clear that "[t]his is a professional liability action," (Doc. 1, ¶ 3), and no claims are asserted in the complaint other than claims for professional malpractice.  Plaintiff has couched his malpractice claims as arising either in tort or contract.  However, as explained below, we do not find that Plaintiff has adequately pled a separate claim for breach of contract, but has instead simply repackaged his allegations of negligence and recast them as a breach of contract claim.  Upon consideration, we find that in its current form, Plaintiff's complaint fails adequately to plead a separate claim sounding in contract.

   The Pennsylvania Superior Court has explained that in professional malpractice actions, clients have a "choice" to sue their attorney under trespass or assumpsit, and both theories may be pursued in the same action.  <u>Duke & Co. v. Anderson</u>, 418 A.2d

613 (Pa. Super. Ct. 1980); <u>see also</u> <u>Stacey v. City of Hermitage</u>, No. 2:02-cv-1911, 2008 U.S. Dist. LEXIS 29359, *11 (W.D. Pa. April 7, 2008) (recognizing both theories of liability in the legal malpractice context).  The trespass theory is based on a failure to exercise the requisite standard of care, whereas an assumpsit action is predicated on the theory that a lawyer's failure to follow instructions constituted a breach of contract.  <u>Duke & Co.</u>, 418 A.2d at 616.  However, where the claims brought against a lawyer appear to be essentially grounded in a theory of negligence, the claims will be evaluated in accordance with tort principles for purposes of addressing the pending motion to dismiss.

This point was aptly made in <u>Kohn, Savett, Klein & Graf, P.C. v. Cohen</u>, 1990 U.S. Dist. LEXIS 4150, 1990 WL 42244 *5 (E.D. Pa. 1990) (citations omitted), where the district court explained the relationship between these two theories:

> Of course, virtually all legal representation occurs within the scope of a contract between lawyer and client. This does not, however, mean that the contractual limitations period automatically applies. Rather, the courts have looked to the terms of the contract allegedly breached and to the nature of the injury asserted. If the damages requested stem from negligence or other tortious misconduct, then the action sounds in tort and the two-year statute of limitations applies. If the damages arise from a breach of an explicit contractual term, and if the request is only for compensatory damages appropriate in contract, then the action sounds in contract.

In <u>Cohen</u>, the court held that because the malpractice claim was essentially grounded in a theory of negligence, it sounded in tort.  <u>Id.</u>  Other courts have similarly treated

legal malpractice claims that a plaintiff has alleged to be contractual, but where the allegations actually show that the plaintiff is actually alleging negligence.  See Stacey v. City of Hermitage, 2008 U.S. Dist. LEXIS 29359, *21 (W.D. Pa. April 7, 2008) ("The gravamen of the Amended Complaint is that Defendants failed to exercise the appropriate standard of care and Plaintiff cannot repackage the claim under an assumpsit theory to avoid the obligation to prove a 'case within a case' or to avoid the two-year statute of limitations."); IBEW Local 380 Pension Fun v. Buck Consultants, No. 03-4932, 2008 U.S. Dist. LEXIS 7001, *25 (E.D. Pa. Jan. 30, 2008) ("'Failure to perform a service with the requisite level of professional care typically constitutes a claim of negligence, not breach of contract.") (actuarial liability);[2] Storm v. Golden, 538 A.2d 61, 65 (Pa. Super. Ct. 1988) ("appellant's assumpsit claim is not a true contract claim, but sounds in negligence by alleging [that attorney] failed to exercise the appropriate standard of care").  We find the analysis of these cases to be persuasive and entirely applicable to the claims that Plaintiff has actually brought in this action.

Importantly in this case, the foregoing cases have relevance with respect to the statute of limitations on malpractice actions under Pennsylvania state law.  As

---

[2] In IBEW, the plaintiff acknowledged that its contract-based claim for malpractice merely restated its negligence claim, and therefore withdrew the contract claim.  Id.

discussed below, by statute legal malpractice claims sounding in tort are subject to a two-year statute of limitations. Courts have found that plaintiffs "may not repackage a negligence-based malpractice claim under an assumpsit theory to avoid the statute of limitations." Stacey, 2008 U.S. Dist. LEXIS 29359, at *14. As another federal court explained:

> One important limitation on pleading malpractice claims in Pennsylvania under a contract theory, however, is that a malpractice plaintiff may not sidestep the two-year limitation on tort actions by pleading tort claims as breaches of contract . . . . [I]f allegations of a contractual relationship between plaintiff and defendants, and of an express or implied term of the contract establishing an obligation to exercise reasonable care, were to suffice to state a breach-of-contract malpractice case, the two year limitations statute for tort actions would be a dead letter in . . . malpractice cases.

Sherman Indus., Inc. v. Goldhammer, 683 F. Supp. 502, 506 (E.D. Pa. 1988) (citations omitted).

In this case, we find that regardless of the labels he affixes to his claims, Plaintiff is proceeding in this professional liability action under the theory that his lawyer failed to exercise the appropriate duty of care towards him, both in his original representation of Mr. Javaid in connection with the loan transaction and guaranty entered into in 2002, and later when Mr. Javaid was attempting to open or strike the confession of judgment entered against him in the Court of Common Pleas for Lycoming County in 2008. Plaintiff has not attached an engagement letter or other

contract to the complaint, and he has supplied only the sparest of allegations regarding any agreement that he may have had with Mr. Weiss regarding his representation. Although he has attempted to shore up his contract theory in his brief opposing Defendant's motion to dismiss, It is well-settled that a plaintiff cannot amend a complaint through the filing of a brief, or through arguments set forth in a brief opposing a dispositive motion.  Indeed, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." Pennsylvania ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984)); cf. Frederico v. Home Depot, 507 F.3d 188, 202 (3d Cir. 2007) ("[W]e do not consider after-the-fact allegations in determining the sufficiency of [a] complaint under Rules 9(b) and 12(b)(6)."). Therefore, we are bound to consider only the allegations actually set forth in the complaint, and upon consideration we conclude that these claims, in their present form, do not set forth a distinct claim for breach of contract.

In particular, Plaintiff claims that he instructed his lawyer to assert arguments in the Court of Common Pleas in an effort to open or set aside a judgment that had been entered against Mr. Javaid, and that his lawyer failed unreasonably to make unspecified arguments that Plaintiff claims would have given him certain rights or may even have led to the dissolution of the judgment.  Out of this general allegation,

Plaintiff endeavors to set forth two distinct legal claims, one for breach of contract and one sounding in tort.  Nevertheless, review of these claims as they are actually pled in the complaint shows that they are substantially identical, and the complaint is bereft of distinct factual allegations to support distinct legal claims.

Indeed, in his claim for "Legal Malpractice (Assumpsit)," Plaintiff claims only that Mr. Weiss "implicitly and explicitly agreed to represent Plaintiff competently and to the best of his abilities" in accordance with the rules and standards governing lawyers in Pennsylvania, and that Mr. Weiss breached this "contractual engagement[]" by "fail[ing] to raise and/or pursue the arguments noted above, in violation of the rules and standards governing attorneys in the Commonwealth of Pennsylvania." (Compl. ¶¶ 30, 31.)  Plaintiff's claims for "Legal Malpractice (Trespass)" are substantially the same.  (Compl. ¶¶ 32-36.)  Plaintiff's own generic allegations therefore indicate that he is essentially bringing the same claims under two separate theories, but based upon the same essential factual allegations. We therefore will consider Plaintiff's claims together, rather than address them separately as distinct contract and tort claims.[3]

**B.     Plaintiff's Allegations Are Insufficient to Support a Claim for Legal**

---

[3] Our findings with respect to this issue, and our treatment of the claims in this fashion should not be interpreted as a ruling that prevents Plaintiff from filing an amended complaint more adequately pleading these claims separately in an amended complaint, provided he reasonably believes that he has a legitimate legal basis for bringing claims under either or both theories.

**Malpractice Under Pennsylvania Law, and Fall Short of the Pleading Standards Applicable in Federal Court.**

As a federal court sitting in diversity, we must apply Pennsylvania substantive law to Plaintiff's legal malpractice claims.  See Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938); Nat'l Grange Mut. Ins. Co. v. Goldstein, Heslop, Steel, Clapper, Oswalt & Stoehr, 142 F. App'x 117 (3d Cir. 2005) (applying Erie to legal malpractice claims under Pennsylvania law).  In order to prevail on a claim of legal malpractice under Pennsylvania law, a plaintiff most establish the following elements: "1) employment of the attorney or other basis for duty; 2) the failure of the attorney to exercise ordinary skill and knowledge; and 3) that such negligence was the proximate cause of damage to the plaintiff."  Kituskie v. Corbman, 714 A.2d 1027, 1029 (Pa. 1998) (quoting Rizzo v. Haines, 555 A.2d 58, 65 (Pa. 1989)).  Moreover, "[a]n essential element to this cause of action is proof of actual loss rather than a breach of professional duty causing only nominal damages, speculative harm or the threat of future harm."  Kituskie, 714 A.2d at 1030.

Beyond showing that the defendant lawyer's representation was deficient, "a legal malpractice action in Pennsylvania requires the plaintiff to prove that he had a viable cause of action against the party he wished to sue in the underlying case."  Id. Stated differently, "a plaintiff must prove a case within a case since he must initially establish by a preponderance of the evidence that he would have [prevailed] in the

17

underlying action.," id., before reaching the attorney's alleged failure to exercise ordinary skill and knowledge. Id. Thus, "[i]t is only after the plaintiff proves he would have recovered a judgment in the underlying action that the plaintiff can proceed with proof that the attorney he engaged to prosecute or defend the underlying action was negligent . . . ." Id.

Defendant initially argues that following Twombly and Iqbal, Plaintiff's complaint simply falls short of what is required at the pleading stage to survive the pending motion to dismiss. Defendant characterizes Plaintiff's complaint as conclusory and vague, and essentially predicated on a very generic claim that had Mr. Weiss done something differently in the state court litigation, Mr. Javaid would have obtained "substantial rights," (Doc. 1, ¶ 26), or somehow avoided having judgment entered against him. Defendant insists that such allegations are insufficient to state a claim for malpractice, or are otherwise too vague to satisfy the federal pleading standards.

In response, Plaintiff emphasizes that "[w]hat Plaintiff clearly complains about is Elliott Weiss' failure to make an appropriate challenge to the entry of the Judgment against Asif Javaid based upon Choice of Law principles." (Doc. 13, at 7.) With the complaint appropriately clarified in this way, we agree with Defendant that the complaint lacks sufficient allegations to support a claim for legal malpractice.

Reading the complaint in the light most favorable to Mr. Javaid, we find that Plaintiff has merely alleged that he directed his lawyer to move to open or strike the judgment on the basis that Mr. Javaid had not originally agreed to the confession of judgment clause itself in a knowing, intelligent or voluntary manner, and to assert an entirely unspecified "choice of law" argument that Plaintiff suggests without further support might have had relevance under New York law, and which might have resulted in Plaintiff being granted "substantial rights".  (Doc. 1, ¶¶ 19, 20, 21.) Plaintiff further complains that Mr. Weiss either failed to make these arguments, or otherwise abandoned them during litigation.  (Id. ¶ 21.)  Plaintiff also claims that Mr. Weiss failed to inform him about the Superior Court's decision on appeal upholding the decision of the Court of Common Pleas denying the petition to open or strike, and failed to provide this information to Plaintiff until sometime after November 10, 2009, when Plaintiff's lawyer in New York demanded a copy.[4]  (Id. ¶ 22-23.)  Finally,

---

[4] We pause to note that upon review of documents that Defendant attached to his brief, we find this allegation very difficult to credit, even on a motion to dismiss.  Defendant has submitted a copy of the verified petition that Mr. Weiss filed on Mr. Javaid's behalf in the Court of Common Pleas on March 3, 2008. (Doc. 12, Ex. B.)  Notably, it appears that Mr. Javaid verified the allegations made in this petition, "certify[ing] that the facts set forth in the foregoing Petition are true, correct and accurate to the best of [his] knowledge, information and belief." (Id.)  While we do not find it necessary to rely upon the truth of this document in order to resolve the pending motion, we do note that it is difficult to see how Mr. Javaid can claim that he was unaware of the allegations made, or not made, in a petition that he appears to have verified before it was filed.  We provide further

Plaintiff claims he instructed Mr. Weiss to pursue an appeal to the Pennsylvania Supreme Court, but Mr. Weiss failed to do so.  (Id. ¶ 24.)  Plaintiff claims that it was not until he obtained a copy of the Superior Court's adverse decision that he became aware that Mr. Weiss had not pursued the claims that he had been instructed to bring in the Court of Common Pleas.  (Id. ¶ 25.)  Plaintiff also alleges that he did not knowingly, intelligently, or voluntarily agree to the confession of judgment clause as part of his guarantee of the 2002 loan agreement.  (Id. ¶ 26.)  Plaintiff speculates in conclusory fashion that this alleged fact might have prevented the judgment from having been entered against him under New York law, which he claims should have governed the validity of the guaranty agreement.  (Id.)  In addition, Plaintiff claims that had Mr. Weiss argued these points, as he was instructed to do, Plaintiff would have prevailed and the judgment would not have been entered against him.  (Id.)

Defendant dismisses these arguments, asserting that they are nothing more than rank speculation and impermissible second-guessing.  Indeed, Defendant argues that under Pennsylvania law, legal malpractice claims can not be based upon raw conjecture about what might have happened if counsel had employed a different strategy, or presented a different theory of relief, in court proceedings.  Even more

---

discussion about the documents Defendant has submitted to the Court, and their potential bearing upon Plaintiff's amended complaint, in footnote 5, infra.

fundamentally, however, Defendant argues persuasively that Plaintiff's very spare allegations simply are inadequate to state a claim for "legal malpractice" under the Twombly and Iqbal pleading standards. Considering the allegations summarized above, we agree that Plaintiff's complaint is improperly long on legal conclusions and vague assertions, and far too short on plausible factual allegations necessary to support a cause of action.

Our findings in this regard are underscored by the fact that there is no dispute that Mr. Weiss did, in fact, file a petition on Mr. Javaid's behalf that had the result of reducing by more than one half-million dollars the amount of the judgment that had been entered against him. Thus, despite this manifestly positive outcome of the legal proceedings that Mr. Weiss prosecuted on Plaintiff's behalf, Plaintiff claims that more still should have been done, and that Mr. Weiss's failure to do more constitutes legal malpractice. Among the problems we find with Plaintiff's position as currently pleaded is that the allegations are speculative, vague, and conclusory. Nowhere in the complaint does Plaintiff explain what legal arguments could reasonably have been asserted in the Court of Common Pleas, and he persists in alleging that some unspecified provision of New York law may have saved him from owing anything on

the guaranty that he himself signed in 2002.[5]

_____

[5] We note that the Defendant has also submitted a number of documents that were apparently attached to court filings in the Court of Common Pleas bearing Mr. Javaid's signature, including copies of the guaranty agreement that Mr. Javaid appears to have executed, which itself included a special acknowledgment form that Mr. Javaid appears to have initialed indicating his understanding of the very terms that he now says Mr. Weiss should have argued were not knowingly, intelligently, and voluntarily entered into. (Doc. 12, Exhibits.)

Although Plaintiff has not expressly disavowed these documents, Plaintiff's counsel contends that he had insufficient opportunity to review all of these materials prior to commencing the action, and he argues he is therefore unable to "admit anything beyond" the fact that Plaintiff guaranteed ARM's loan in 2002. (Doc. 13, at 3.)  Because Plaintiff has seemed to raise some question about the potential veracity of these materials, we decline to rely upon their truth for purposes of this opinion.  However, now that Plaintiff's counsel has unquestionably been made aware of these materials, and their obvious significance to the claims in this case, it is expected that in an amended complaint Mr. Javaid will take care to make allegations that have a legitimate factual basis that have been adequately investigated by counsel.

In this regard, we emphasize that in the original complaint Mr. Javaid seems to be contending that he unknowingly or involuntarily entered into a guaranty of a substantial loan agreement, and that Mr. Weiss failed to counsel him adequately in 2002 and failed in 2008 to argue that the judgment should be set aside because the guaranty was not entered into knowingly or voluntarily.  In stark contrast, Defendant has filed copies of loan documents that appear to show Mr. Javaid expressly acknowledged that he understood exactly what he was doing when he executed the guaranty.  (Doc. 12, Ex. A, Disclosure For Confession of Judgment) (in which the initials "AJ" appear under a representation that the signatory, inter alia, "knowingly, understandingly and voluntarily [is] waiving [his] rights to resist the entry of judgment against [him] at the courthouse" and that he understands the guaranty contains a confession of judgment clause).  Thus, while we credit counsel's representation that when he filed the original complaint he had not had the benefit of reviewing "the entire file," (Doc. 13, at 3), he has now been placed on notice of additional information that is acutely relevant to Plaintiff's claims and

Furthermore, we find that the complaint fails to set forth allegations from which Plaintiff might be able to prove that the damages he alleges were caused by Mr. Weiss's failure to raise certain unspecified legal arguments.   Again, under Pennsylvania law a plaintiff must prove, <u>inter</u> <u>alia</u>, that his attorney's alleged negligence was the "proximate cause of damage to the plaintiff." <u>Kituskie v. Corbman</u>, 714 A.2d 1027, 1029 (Pa. 1998) (quoting <u>Rizzo v. Haines</u>, 555 A.2d 58, 65 (Pa. 1989)).   Moreover, "[a]n essential element to this cause of action is proof of actual loss rather than a breach of professional duty causing only nominal damages, speculative harm or the threat of future harm." <u>Kituskie</u>, 714 A.2d at 1030.   In this case, Plaintiff has failed to allege well-pleaded facts which sufficiently allege that Mr.

---

theories in this case, and we remind him that Rule 11 of the Federal Rules of Civil Procedure provides that

> "[b]y presenting to the court a pleading . . . an attorney . . . certifies to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonably opportunity for further investigation or discovery . . . ."

Fed. R. Civ. P. 11(b)(3).

Our ruling here today will give the Plaintiff an ample opportunity to meet these pleadings standards in a fashion that comports with Rule 11's requirements in the face of what are, thus far, uncontested records.

Weiss could be considered the proximate cause of actual loss to the plaintiff.  To the contrary, the pleadings and other documents that have been submitted indicate only that the source of Plaintiff's damages – the confession of judgment entered in the Court of Common Pleas, and later enforced in New York state – were directly caused by ARM's default on its loan obligations, which Plaintiff had previously guaranteed.

Plaintiff's theory seems to be that if Mr. Weiss had just made one or more additional unspecified arguments, he might have obtained additional rights for Plaintiff, or might have had the judgment set aside entirely.  This unadorned allegation is made without any well-pleaded factual support and, as pleaded, simply does not "describe 'enough facts to raise a reasonable expectation that discovery will reveal evidence of' each necessary element of the claims alleged" in the complaint. Santiago v. Warminster Twp., 629 F.3d 121, 123 (3d Cir. 2010). We are therefore unable to find that such a conjectural assertion is sufficient to plead that Mr. Weiss's representation was the proximate cause of Plaintiff's loss, particularly following a representation that resulted in Plaintiff owing more than $500,000 less than he had before Mr. Weiss petitioned to reduce the judgment.

Thus, we find that Plaintiff's complaint, as currently drafted, is subject to dismissal for failure to state a claim because it does not sufficiently allege a plausible cause of action of legal malpractice under Pennsylvania law, and fails to conform with

24

the pleading requirements under Rule 8 of the Federal Rules of Civil Procedure, as

clarified by the Supreme Court in <u>Twombly</u> and <u>Iqbal</u>.

## B.    Statute of Limitations

In addition, Defendant has asserted that Plaintiff's negligence claims relating

to Mr. Weiss's alleged failure to raise certain arguments in the Court of Common

Pleas in February 2008 are now time-barred.  Relying on Pennsylvania law, Plaintiff

asserts that the Court is not permitted to consider the statute of limitations on a motion

to dismiss.  Plaintiff is wrong.

In the Third Circuit, district courts may consider the application of the statute

of limitations where the complaint demonstrates that the claims are untimely.  <u>See</u>

<u>Robinson v. Johnson</u>, 313 F.3d 128, 135 (3d Cir. 2002); <u>Rycoline Prods, Inc. v. C&W</u>

<u>Unlimited</u>, 109 F.3d 883, 886 (3d Cir. 1997) (affirmative defense must be apparent

on the face of the complaint to be subject to a Rule 12(b)(6) motion); <u>Oshiver v.</u>

<u>Levin, Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1385 n.1 (3d Cir. 1994) ("While

the language of Fed. R. Civ. P. 8(c) indicates that a statute of limitations defense

cannot be used in the context of Rule 12(b)(6) motion to dismiss, an exception is made

where the complaint facially shows noncompliance with the limitations period and the

affirmative defense clearly appears on the face of the pleading.").  Thus, in cases

where application of the statute of limitations is obvious from the allegations in the

complaint, and not reasonably susceptible to dispute, a court may reach the issue of timeliness on a motion to dismiss.

Pennsylvania imposes a two-year statute of limitations on tortious conduct, including legal malpractice actions. 42 Pa. Const. Stat. Ann. § 5524. "Pennsylvania favors strict application of statutes of limitations." Knopick v. Connelly, 639 F.3d 600, 606 (3d Cir. 2011) (citing Glenbrook Leasing Co. v. Beausang, 839 A.2d 437, 441 (Pa. Super. Ct. 2003)). "Whether a statute has run on a claim is usually a question of law for the trial judge, but where the issue involves a factual determination, the determination is for the jury." Knopick, 639 F.3d at 607 (citations omitted).

In a case addressing the event that triggers the statute of limitations in the context of a legal malpractice action, the Third Circuit summarized as follows:

> The trigger for the accrual of a legal malpractice action is not the realization of actual loss, but the occurrence of a breach of duty. Wachovia Bank, N.A. v. Ferretti, 935 A.2d 565, 572, 2007 PA Super 320 (Pa. Super. Ct. 2007). Under the occurrence rule, "the statutory period commences upon the happening of the alleged breach of duty." Id. at 572 (quoting Robbins & Seventko Orthopedic Surgeons, Inc. v. Geisenberger, 449 Pa. Super. 367, 674 A.2d 244, 246-47 (Pa. Super. Ct. 1996)). Where a plaintiff could not reasonably have discovered his injury or its cause, however, Pennsylvania courts have applied the discovery rule to toll the statute of limitations. Wachovia, 935 A.2d at 572-74 (citing Pocono Int'l Raceway v. Pocono Produce, Inc., 503 Pa. 80, 468 A.2d 468, 471 (Pa. 1983)). Where the discovery rule does apply, the two-year period on legal malpractice actions begins to run where the plaintiff knew or in the exercise of reasonable diligence should have known of the injury and its cause. Crouse v. Cyclops Indus., 560 Pa. 394, 745 A.2d 606, 611 (Pa. 2000).

Id. Although it is true that the Third Circuit has held that Pennsylvania law recognizes an exception to the occurrence rule in legal malpractice cases known as the "discovery rule," which applies "when the injured party is unable, despite the exercise of diligence, to know of his injury or its cause," we are unable to find this exception applicable in this case. Id. at 609 (footnote omitted). Where applicable, "the discovery rule tolls the running of the statute of limitations until a plaintiff is put in a position to discover the injury and its cause, either through inquiry or retention of a new lawyer." Id. Even in such a case, however, "[k]nowledge may also be imputed to plaintiffs when an adverse action is taken against them, be it through a court order or through a third party action, thus initiating the running of the statute of limitations at that time." Id.

Plaintiff's claims appear to be largely predicated on the actions that Mr. Weiss took in the Court of Common Pleas in early March 2008, when he filed a petition seeking to open or strike the confessed judgment that had been entered against Mr. Javaid, and Mr. Weiss' prior representation of Mr. Javaid in 2002 when these guarantees were executed. As noted above, Defendant has filed with the Court a copy of court records, including the verification that accompanied the petition, and it appears to show that Mr. Javaid verified the petition and its claims on February 28, 2008. In considering a motion to dismiss we may "consider . . . the allegations

contained in the complaint, exhibits attached to the complaint and matters of public record ." Pension Ben. Guar. Corp. v. White Consol. Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)(citations omitted). Such matters of public record may include "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Id. (citations omitted)

Here we find that, at present, there is no genuine dispute that these documents, taken from the court records of the underlying case in which Javaid alleges that there has been legal malpractice, are both authentic and form part of the basis of the plaintiff's claim. Therefore, they are properly considered by us at this stage of proceedings, and based upon this verification attached to a petition that his lawyer filed in state court, it would appear that Mr. Javaid was representing to the Court of Common Pleas his awareness of the arguments that Mr. Weiss had made before that tribunal – as well as the absence of the "choice of law" arguments that Plaintiff suggests should have been made in those proceedings, but were not. Based on this verification, without further well-pleaded facts in the Plaintiff's complaint it is difficult to understand Plaintiff's bald allegation that he was entirely unaware of Mr. Weiss's arguments before the Court of Common Pleas until sometime in November 2009, when his New York counsel demanded copies of certain documents from Mr. Weiss.

In addition, we observe that on December 12, 2008, SPCP Group filed a complaint against Mr. Javaid in Dutchess County, New York, in which SPCP Group made a number of specific allegations about the procedural history in the Lycoming County litigation.  (Doc. 12, Ex. E.)  Plaintiff, through his New York counsel, answered this complaint on January 29, 2009 – and, once again, Mr. Javaid appears to have verified this answer.  (Doc. 12, Ex. F.)  Thus, any amended complaint in this action should also plead facts which show how, in the face of this second verification and apparent representation by Mr. Javaid, the Plaintiff can claim that he remained unaware about the Pennsylvania litigation until sometime in November 2009.

Likewise, to the extent Plaintiff is somehow attempting to fold into this litigation a claim that Mr. Weiss was negligent for failing to counsel him about the meaning and import of the guaranty he entered into in 2002, Defendant has offered documents which on their face appear to contradict this claim and call out for further well-pleaded facts to support the Plaintiff's claims.  In particular, Defendant has submitted a document that appears to reflect that Mr. Javaid acknowledged that "counsel of Guarantor's own choosing has advised Guarantor in the negotiation, execution and delivery of this Guaranty . . . ."  (Doc. 12, Ex. A.)  Additionally, the parties included as part of the loan documents a Disclosure of Confession of Judgment form that appears to bear Mr. Javaid's initials acknowledging and agreeing to the

terms of the guaranty, and representing that he was knowingly and voluntarily accepting the terms of the guaranty and the confession of judgment clause that was included with the agreement.

Taken together, these documents call for the recitation of some further well-pleaded facts to sustain the Plaintiff's otherwise unsupported insistence in this action that he was unaware of Mr. Weiss's alleged shortcomings until November 2009. Instead, these documents – individually and collectively – appear to show that Plaintiff was on notice of Mr. Weiss's professional conduct at the time of the loan agreement in 2002, during the underlying Pennsylvania litigation in March 2008, and during the New York litigation in January 2009 – well over two years before he commenced this action in June 2011.

In the face of this presently undisputed documentary evidence– which consists of "matters of public record " along with a "document that a defendant attaches as an exhibit to a motion to dismiss [where] the plaintiff's claims are based on the document," Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.,  998 F.2d 1192, 1196 (3d Cir. 1993)(citations omitted)–we find that, in the absence of further well-pleaded facts, the statute of limitations may ultimately preclude many or all of the claims in this lawsuit.  Therefore, to the extent that Plaintiff continues to believe that this lawsuit has been timely filed, it is incumbent upon him to include additional

well-pleaded factual allegations in his amended complaint to support such a position.[6]


## V.   <u>ORDER</u>

Accordingly, for the reasons set forth above, IT IS HEREBY ORDERED THAT Defendant's motion to dismiss (Doc. 7) is GRANTED without prejudice to Plaintiff filing an amended complaint within 30 days from the date of this order.

To the extent that Plaintiff fails to file an amended complaint in accordance with this order, this action may be dismissed with prejudice without further notice.

/s/ Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge

Dated: December 19th , 2011

---

[6] We recognize that the statute of limitations is an affirmative defense, and one we would expect that Defendant to assert again upon the filing of an amended complaint.  Because we believe it likely that such a defense will be raised, and because this Court clearly may consider the statute of limitations on a motion that may be filed in response to the amended complaint, Plaintiff would do well to include factual allegations that bear on the issue of timeliness to any claims that might be asserted in his amended complaint.