**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ASIF JAVAID,** | : | **Civil No. 4:11-CV-1084** |
| | : | |
| **Plaintiff** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **v.** | : | |
| | : | |
| **ELLIOTT B. WEISS,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION AND ORDER

## I.   INTRODUCTION

Now pending before the Court is the defendant's motion to dismiss the plaintiff's amended complaint for failure to prosecute or, in the alternative, for summary judgment.  (Doc. 50)  The motion was filed after a considerable period of inactivity on the plaintiff's part, during which this litigation made no forward progress, despite the Court impressing upon the plaintiff the need to adhere to pre-trial schedules and to comply with discovery obligations.  During this period it has become evident that the plaintiff exhibited virtually no diligence in attempting to move this case forward after having been granted a lengthy period of time to retain new counsel and to respond to discovery requests that have languished for months.  Further, we find that, in its current posture, Javaid's malpractice claim fails on its

merits.  Because we find no good cause to further prolong this litigation and delay a resolution of the claims against the defendant, and because we are mindful that this litigation has now been pending for more than two years with little significant activity to move it forward, and most significantly without any evidence having been developed in support of the plaintiff's claims, the defendant's motion will be granted.

## II.     **FACTUAL BACKGROUND**[1]

In this case, which he characterizes as "a professional liability action," (Doc. 20, Am. Compl., ¶ 3), plaintiff Asif Javaid has sued Elliott B. Weiss, his former lawyer, alleging that Mr. Weiss is liable for legal malpractice under both tort and contract theories of liability relating to Mr. Weiss's representation of the plaintiff in a 2008 action in the Lycoming County Court of Common Pleas.

---

[1] Although this matter comes before the Court on summary judgment, there appears to be relatively little dispute regarding the background to this litigation; indeed, the only real controversy in this case is whether the defendant's representation of the plaintiff constituted legal malpractice.  In light of this substantial agreement about the history leading up to this case, the background to this opinion is taken largely from allegations set forth in plaintiff's amended complaint, as well as from documents that were originally attached to court filings in other proceedings that defendants have attached to their prior motion to dismiss, and which are relevant to plaintiff's claims in this action.  The defendant's statement of material facts (Doc. 52) largely recites the procedural history of this case, and in that regard is consistent with our summary of the relevant factual and procedural background set forth herein.

Plaintiff's claims arise out of a loan transaction that resulted in Mr. Javaid, as a guarantor on the loan to ARM Hospitality, Inc., having a confessed judgment entered against him for $865,910.53 – an amount that was later reduced to $366,008.79 – after ARM defaulted on its loan obligations. Mr. Weiss was engaged as Mr. Javaid's counsel both during the original loan transaction in 2002, and again later in March 2008, when Weiss endeavored to have the confessed judgment against Javaid set aside. Plaintiff contends in this litigation that Mr. Weiss's representation fell below prevailing professional standards, and also constituted a breach of a specific contractual agreement between the parties, with respect to Mr. Weiss's efforts to relieve Mr. Javaid of personal liability under the loan guarantees on the grounds that the loan documents were somehow legally deficient or otherwise unenforceable against Mr. Javaid under applicable New York law.[2]

In 2002, plaintiff retained defendant's legal services in connection with a loan transaction between ARM Hospitality, Inc. ("ARM"), as borrower, and BLC Capital

---

[2] In the original complaint, the plaintiff had also claimed that the defendant committed legal malpractice with respect to his representation in 2002 at the time the underlying loan was executed, when Mr. Javaid guaranteed the borrower's obligations and signed confessions of judgment related thereto. (Doc. 1) In the amended complaint, the plaintiff abandoned his claims relating to the defendant's representation in 2002, and instead focuses his claims exclusively on the defendant's representation in 2008, when he filed a petition seeking to relieve the plaintiff from judgment on the loan guaranty. (Doc. 20)

Corp. ("BMC") as lender. In this transaction, BLC loaned ARM $700,000, which was secured by a stock pledge from ARM's shareholders, and by a personal guaranty by Javaid, who at that time was ARM's president. The express terms of the guaranty that Javaid executed as part of this transaction authorized the lender to confess judgment against Javaid for any unpaid part of the note.

Plaintiff engaged Mr. Weiss to provide him with legal counsel at the time the loan transaction was being entered into, and again later in 2006 and 2008 when proceedings were commenced in the Lycoming County Court of Common Pleas following an event of default under the loan and the entry of a confessed judgment against Mr. Javaid.

After ARM defaulted on its loan obligations, SPCP Group, Inc., the assignee of BLC's rights under the loan, commenced foreclosure proceedings against the real property that secured the note. On February 1, 2008, the subject property was sold at a sheriff's sale to Little League Baseball, Inc. for $588,500.00. On February 6, 2008, the Court of Common Pleas of Lycoming County entered judgment in favor of SPCP Group, Inc. in the amount of $859,910.53. (Doc. 12, Ex. B.)

Less than one month later, on March 3, 2008, plaintiff filed a petition to strike or open the confessed judgment. (Doc. 25, Ex. C) Plaintiff engaged Mr. Weiss to file this petition on his behalf. In the petition, plaintiff argued that the attorney's fees

claimed by SPCP Group were unreasonably excessive; that plaintiff was entitled to a credit equal to the sale price of the subject property; and that the Deficiency Judgment Act barred the SPCP Group from recovering from plaintiff. (Id.) On April 22, 2008, the Court of Common Pleas denied the petition, but reduced the judgment to include a credit in the amount of $515,675.92 resulting from the sale of the real property that had secured the loan. (Doc. 25, Ex. D) Plaintiff appealed to the Pennsylvania Superior Court, which affirmed the Court of Common Pleas's order in an opinion issued on November 10, 2009.

While plaintiff's appeal before the Pennsylvania Superior Court was pending, SPCP Group took steps to enforce the judgment against plaintiff in New York state. Thus, on December 12, 2008, SPCP Group filed a complaint in the Supreme Court of the State of New York, Dutchess County, seeking enforcement. (Doc. 25, Ex. E) Plaintiff, through New York counsel, filed a verified answer in response to the complaint on January 29, 2009. (Doc. 25, Ex. F) SPCP Group proceeded to move for summary judgment on its enforcement action. (Doc. 12, Ex. G) Plaintiff did not respond to this motion, and on July 22, 2009, judgment was entered against plaintiff in the amount of $366,008.79, plus costs and interest dating from December 12, 2008. (Doc. 25, Ex. H)

In this action, plaintiff claims that he engaged Elliott Weiss to "file petitions relevant to relieving Asif Javaid of personal liability based upon perceived insufficiencies of the loan documents and the foreclosure process" in the Lycoming County Court of Common Pleas.  (Doc. 20, Am. Compl. ¶ 10)  Plaintiff claims that Weiss was aware that the confession of judgment clause in the loan documents was governed by New York law, (id. ¶¶ 12-17), and was made aware that New York law rendered the confession of judgment entered in Pennsylvania legally deficient.  (Id. ¶ 21.)

Plaintiff claims that he instructed defendant to raise the applicability of New York law and its application to the confession of judgment in the Court of Common Pleas, and that Weiss explicitly agreed to do so.  (Id. ¶ 22.)  Plaintiff claims that defendant informed him that he had prepared a petition to obtain relief from the judgment based upon "the requirements of the contract and New York Law."  (Id. ¶ 19.)  Defendant allegedly had Mr. Javaid execute blank verifications without first reviewing the content of the petitions that defendant prepared and later filed.  (Id. ¶ 20.)  Plaintiff alleges that Mr. Weiss filed declined to file certain documents that he had agreed to file, and that Mr. Weiss further failed to keep him apprised of the progress of the Lycoming County litigation after it commenced.  (Id. ¶ 24.)

Plaintiff alleges that he did not learn about the Court of Common Pleas' denial of his petition for relief from judgment until sometime after November 10, 2009, when his New York counsel obtained a copy of the Pennsylvania Superior Court's memorandum affirming the decision. (Id. ¶ 28.) Plaintiff thus claims that it was only at this time that he learned Mr. Weiss had not asserted the application of New York law in the Lycoming County proceedings – something that plaintiff claims defendant expressly agreed to do, and which if done would have prevented the judgment from being entered against plaintiff on the guaranty. (Id. ¶¶ 32-33.)

Plaintiff claims that "a judgment in the amount of $865,910.53 plus cost [sic] was entered against Asif Javaid as a result of the acts or omissions of defendant Elliott Weiss." (Id. ¶ 34.) Plaintiff acknowledges that following litigation and reduction, a judgment in the amount of $366,008.79 was entered against plaintiff in the State of New York. (Id. ¶ 35.) Plaintiff claims that this entire judgment would have been precluded if Mr. Weiss had only asserted the application of New York law as a complete defense in the Lycoming County proceedings that were undertaken to defend against the judgment. (Id. ¶ 39.) Plaintiff alleges that by the time the lender filed suit against him in Dutchess County, New York to enforce the judgment, plaintiff was no longer capable of attacking the validity of the judgment, and is thus subject the judgment entered against him. (Id. ¶ 41.)

Out of these allegations, plaintiff brought claims against Mr. Weiss for legal malpractice under both tort and contract theories of liability for his alleged failure to assert various provisions of New York law that plaintiff claims would have acted as an absolute bar to the judgment that was ultimately entered against him, despite Mr. Weiss having expressly agreed to do so.

## III.  **PROCEDURAL BACKGROUND**

Plaintiff initiated the instant lawsuit on June 6, 2011.  (Doc. 1)  The Court subsequently entered an order granting defendant's motion to dismiss the complaint without prejudice to plaintiff filing an amended complaint to cure the deficiencies that had been identified.  (Doc. 19)  On January 18, 2012, plaintiff filed an amended complaint.  (Doc. 20)  Defendant moved to strike allegations and dismiss the amended complaint on February 1, 2012.  (Doc. 21)  In a memorandum opinion issued on August 30, 2012, the Court denied the motion.  (Doc. 33)

On September 19, 2012, the defendant answered the amended complaint.  (Doc. 34)  On September 28, 2012, the Court issued a revised case management order, which enlarged the discovery period to January 7, 2013, and set a number of additional pre-trial deadlines prior to jury selection and trial scheduled to commence on May 13, 2013.  (Doc. 35)

At this point, the litigation appears to have devolved, and it has remained in a period of dormancy ever since, despite the Court's and defendant's efforts to keep it moving. Thus, on November 9, 2012, the plaintiff's counsel moved for leave to withdraw, citing personal illness. (Doc. 36) In the motion, the plaintiff's counsel represented that he had endeavored to speak with the plaintiff and the plaintiff's New York counsel prior to seeking leave to withdraw, but was unable to get either to respond to his requests. (Id.) Upon consideration of the motion, we entered an order granting the plaintiff's counsel leave to withdraw, and we directed the plaintiff to inform the Court on or before Tuesday, January 8, 2013, as to whether he had retained new counsel, or whether he intended to proceed *pro se* on his own behalf. (Doc. 37) We also stayed the litigation until Tuesday, January 8, 2013, or further order of the Court. (Id.)

From that time until April 12, 2013, the plaintiff failed to communicate with the Court in any way, and never responded to the Court's order directing him to notify us about whether he has engaged new counsel, or whether he will be prosecuting this action on his own.

In an effort to keep this litigation moving forward in some fashion, the defendant's counsel served the plaintiff with interrogatories and document requests, but these went unanswered. (Doc. 38, ¶¶ 13-14.) Counsel followed up on these

requests in written correspondence dated February 27, 2013, but received no response from the plaintiff.  (Id. ¶¶ 14-15.)  Finally, the defendant's counsel wrote a second letter to the plaintiff on March 8, 2013, to inquire into the status of the plaintiff's discovery responses, and represented that if the plaintiff did not respond, she would file a motion to compel.  (Id. ¶ 16.)

In response to this letter, the defendant's counsel represents that on March 18, 2013, the plaintiff called her to discuss his efforts to find a new lawyer.  (Id. ¶ 17.) Defendant's counsel agreed to give the plaintiff until April 1, 2013, to furnish responses to the outstanding discovery requests, regardless of whether the plaintiff had retained new counsel.  (Id.)  As of April 1, 2013, no counsel had entered an appearance on the plaintiff's behalf, and the plaintiff had not responded to the defendant's interrogatories or document requests.  Thereafter, the plaintiff's failure to prosecute this action, to identify new counsel or litigate on his own behalf, and his failure to respond to outstanding discovery that has been propounded upon him, caused the defendant to move for an order compelling the plaintiff to respond, or suffer the imposition of sanctions upon further motion.  (Doc. 38)

Upon consideration of the motion, the extended dormancy of this litigation, and the failure of the plaintiff to comply with the Court's orders and with discovery requests, we entered an order directing the plaintiff to show cause on or before

Friday, April 12, 2013, why the motion to compel should not be granted for his failure to respond to the unanswered discovery requests that have been served upon him. We also scheduled an in-person conference with defendant's counsel and the plaintiff in order to address the case-management of this action going forward. That conference was scheduled to be held on May 1, 2013.[3]

In response to this order, on April 12, 2013, the plaintiff filed a motion for extension of time to find counsel willing to represent him in this litigation, and for an extension of time to respond to the long outstanding interrogatories based on the plaintiff's representation that "most of these interrogatories are beyond the scope of [his] legal knowledge." (Doc. 42) The defendant opposed the motion the same day. (Doc. 43)

Upon consideration, we granted the plaintiff's motion, in part, and directed him to furnish answers to the interrogatories by Tuesday, April 30, 2013, regardless of whether or not he had retained counsel. In this way, we also granted the defendant's pending motion to compel the plaintiff to respond. We reviewed the interrogatories that the defendant propounded upon the plaintiff – which had by that time gone unanswered for months – and found that they did not require specialized legal

---

[3] The conference was originally scheduled to be held on Monday, April 29, 2013, at 1:30 p.m., but the date and time was subsequently changed at the request of defendant's counsel. (Doc. 41)

training to answer, as they sought straightforward factual information.  The plaintiff

was, therefore, directed to answer the interrogatories in accordance with the order;

although we also ruled that if the plaintiff was able to find counsel to represent him,

and if counsel requested leave to supplement the plaintiff's initial answers to the

interrogatories, counsel would be permitted to seek such relief at that time.

We also ruled that to the extent the plaintiff was seeking to postpone the May

1, 2013, in-person conference scheduled in the case, the motion was denied.  In

denying such request, we observed that the litigation had been languishing for

months, and we found that further delays were unwarranted and inappropriate.

Accordingly, in our order issued on April 19, 2013, we instructed the parties

as follows:

1.     On or before **Tuesday, April 30, 2013**, the plaintiff shall respond to the defendant's outstanding interrogatories.  If the plaintiff subsequently retains counsel to represent him, such counsel may seek leave to supplement the interrogatory answers if they deem it necessary or appropriate to do so.

2.     The **in-person** case-management conference scheduled to take place on **Wednesday, May 1, 2013, at 1:00 p.m.**, will go forward as previously scheduled .  The conference will be held at the United States Federal Courthouse, 228 Walnut Street, Harrisburg, Pennsylvania, 11th Floor, Courtroom No. 5.  The plaintiff and counsel for the defendant shall appear in person for this conference.

3.   The plaintiff is specifically placed on notice that failure to comply with the terms of this order may result in the imposition of sanctions including, without limitation, the dismissal of the plaintiff's claims.

(Doc. 44)

In accordance with our order, we convened an in-person conference with the parties on May 1, 2013.  During this conference, the Court addressed questions and concerns raised by the plaintiff, in particular about his professed inability to find replacement counsel and to obtain certain legal files that he represented his former counsel had retained in his possession.  The Court explained to the plaintiff that if he continued to experience difficulty in obtaining his legal files from former counsel, he could seek the Court's assistance in that effort.  In addition, we explained to the plaintiff that as a *pro se* litigant, he had certain rights and obligations, including the right to conduct discovery, and the obligation to comply with Court orders, responding to discovery from the defendant, and to comply with the Court's local rules.  The plaintiff indicated to the Court that he understood these instructions.

In an effort to make this process clear for the plaintiff, we took care to explain the various phases of litigation procedure with the plaintiff, and we invited the plaintiff to ask questions that me might have regarding federal practice and his rights and obligations as a litigant.  Additionally, we advised the parties that we would revise the case management schedule to permit an additional 90 days of discovery –

instead of the 60 days requested by defense counsel – in order to give the plaintiff every reasonable opportunity to obtain his legal files, continue his efforts to engage new counsel, participate in discovery, and cause the litigation to be moved forward after a lengthy period of inactivity.

Following this conference, on May 3, 2013, and in accordance with the instructions we had given to the parties on May 1, the Court issued a Second Revised Case Management Order. (Doc. 46)  In that order, we instructed the parties that fact discovery would close on August 2, 2013.  (Id.)

Between the May 1, 2013 conference with the parties and August 1, 2013, we had no communication from the parties in this case.  On Monday, August 1, 2013, the Court received the plaintiff's one-page request for a further, unspecified, enlargement of the discovery period.  In support of this belated request, the plaintiff represented that he had been unable to obtain his files from his former lawyer, and he requested that the motion be construed as a request for a Court order directing former counsel to produce the plaintiff's files and "related documents".  (Doc. 47)  The plaintiff in no way explained what efforts he had undertaken since May in order to secure his legal materials, or what steps, if any, he took to move this case forward – as he was instructed to do three months prior to filing the motion.

The defendant promptly responded to the motion, filing a brief opposing it on the same day it was filed. (Doc. 48) In his brief, the defendant represented that the plaintiff had served no discovery requests since May 1, 2013. (Id. at 3.) Additionally, the defendant charged that the plaintiff failed to answer the defendant's interrogatories, and did not otherwise respond in any fashion to the defendant's other written discovery requests. Counsel for the defendant represented that the plaintiff did not communicate with her in any way since the May 1st conference, and at no point informed her of any continued difficulty regarding his former counsel. Instead, the day before an already enlarged discovery period was set to close in a case that has languished for more than two years, the plaintiff filed a generic request for a further extension of the discovery deadline.

The defendant opposed any further request. Upon consideration of the motion, we agreed that the plaintiff did not show good cause for his request, and found that his motion reflected the fact that he had ignored the Court's admonishment that he exercise diligence in working to move this case forward, and to comply with his obligations as a litigant in federal court. We thus concluded that further continuance of the discovery deadlines was, therefore, unwarranted, and would present manifest unfairness to the defendant, who more than two years ago was haled into federal court on a legal malpractice charge that had by that time lingered without resolution or

meaningful action. (Doc. 49) As a result, discovery in this action was effectively closed as of August 2, 2013, and in accordance with the case management order in effect in this case, the plaintiff was required to produce his expert reports on or before August 16, 2013.

These deadlines passed without the plaintiff having filed any expert report, testimony, or other evidence in support of his claims that Mr. Weiss "failed to exercise the degree of skill and knowledge which would normally be exercised by members of the legal profession under the same or similar circumstances," (Doc. 20, Am. Compl. ¶ 48), or that Mr. Weiss "failed to represent plaintiff competently and to the best of his abilities," (id. ¶ 45), or that if Mr. Weiss "raised and fully articulated and argued the points of law pled [in the Amended Complaint] and which he was aware of and had agreed to raise, articulate and argue, no judgment would have been entered against Asif Javaid and no judgment would have been enforceable," (id. at ¶ 39). (Doc. 52, Def. Statement of Undisputed Facts ¶ 41)

## IV.  DISCUSSION

### A.  Dismissal Under Rule 41(b) is Appropriate

Rule 41(b) of the Federal Rules of Civil Procedure authorizes a court to dismiss a civil action for failure to prosecute, stating that: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the

action or any claim against it." Fed. R. Civ. P. 41(b). Decisions regarding dismissal of actions for failure to prosecute rest in the sound discretion of the Court, and will not be disturbed absent an abuse of that discretion. Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir. 2002)(citations omitted). That discretion, however, while broad is governed by certain factors, commonly referred to as Poulis factors. As the United States Court of Appeals for the Third Circuit has noted:

> To determine whether the District Court abused its discretion [in dismissing a case for failure to prosecute], we evaluate its balancing of the following factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 868 (3d Cir.1984).

Emerson, 296 F.3d at 190.

In exercising this discretion "there is no 'magic formula' that we apply to determine whether a District Court has abused its discretion in dismissing for failure to prosecute." Lopez v. Cousins, 435 F. App'x 113, 116 (3d Cir. 2011)(quoting Briscoe v. Klem, 538 F.3d 252 (3d Cir. 2008)). Therefore, "[i]n balancing the Poulis factors, [courts] do not [employ] a . . . 'mechanical calculation' to determine whether a District Court abused its discretion in dismissing a plaintiff's case. Mindek v.

Rigatti, 964 F.2d 1369, 1373 (3d Cir.1992)." Briscoe v. Klaus, 538 F.3d at 263. Consistent with this view, it is well-settled that " 'no single Poulis factor is dispositive,' Ware, 322 F.3d at 222, [and it is] clear that 'not all of the Poulis factors need be satisfied in order to dismiss a complaint.' Mindek, 964 F.2d at 1373." Briscoe v. Klaus, 538 F.3d at 263. Moreover, recognizing the broad discretion conferred upon the district court in making judgments weighing these six factors, the court of appeals has frequently sustained such dismissal orders where there has been a pattern of dilatory conduct by a *pro se* litigant who is not amenable to any lesser sanction. See, e.g., Emerson v. Thiel College, supra; Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007); Reshard v. Lankenau Hospital, 256 F. App'x 506 (3d Cir. 2007); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007).

In this case, a dispassionate assessment of the Poulis factors weighs heavily in favor of dismissing this action. At the outset, a consideration of the first Poulis factor, the extent of the party's personal responsibility, shows that the delays in this case are entirely attributable to the plaintiff, who has failed to abide by court orders, and has otherwise neglected to litigate this case, or respond to defense motions.

Similarly, the second Poulis factor– the prejudice to the adversary caused by the failure to abide by court orders–also calls for dismissal of this action. Indeed, this factor–the prejudice suffered by the party seeking sanctions–is entitled to great

weight and careful consideration.  As the United States Court of Appeals for the

Third Circuit has observed:

> "Evidence of prejudice to an adversary would bear substantial weight in support of a dismissal or default judgment." Adams v. Trustees of N.J. Brewery Employees' Pension Trust Fund, 29 F.3d 863, 873-74 (3d Cir.1994) (internal quotation marks and citation omitted).  Generally, prejudice includes "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." Id. at 874 (internal quotation marks and citations omitted). . . . However, prejudice is not limited to "irremediable" or "irreparable" harm. Id.; see also Ware v. Rodale Press, Inc., 322 F.3d 218, 222 (3d Cir.2003); Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co., 843 F.2d 683, 693-94 (3d Cir.1988). It also includes "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy." Ware, 322 F.3d at 222.

Briscoe  v. Klaus, 538 F.3d at 259-60.

In this case the plaintiff's failure to litigate this claim or comply with court

orders now wholly frustrates and delays the resolution of this action.  In such

instances, the defendants are plainly prejudiced by the plaintiff's continuing inaction

and dismissal of the case clearly rests in the discretion of the trial judge.  Tillio v.

Mendelsohn, 256 F. App'x 509 (3d Cir. 2007) (failure to timely serve pleadings

compels dismissal); Reshard v. Lankenau Hospital, 256 F. App'x 506 (3d Cir. 2007)

(failure to comply with discovery compels dismissal); Azubuko v. Bell National

Organization, 243 F. App'x 728 (3d Cir. 2007) (failure to file amended complaint

prejudices defense and compels dismissal).

Turning to the third <u>Poulis</u> factor-the history of dilatoriness on the plaintiff's part–it becomes further clear that dismissal of this action is now appropriate. In this regard, it is clear that "'[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response . . . , or consistent tardiness in complying with court orders.' <u>Adams,</u> 29 F.3d at 874." <u>Briscoe v. Klaus,</u> 538 F.3d at 260-61 (some citations omitted). Here, the plaintiff has failed in his obligations to respond timely to discovery even the Court took pains to explain the importance of this aspect of civil litigation, he essentially failed to respond to a defense motion for summary judgment and developed no evidence in support of his claims and in opposition to the motion, and has otherwise not complied with orders of the Court. Thus, the plaintiff's conduct displays "[e]xtensive or repeated delay or delinquency [and conduct which] constitutes a history of dilatoriness, such as consistent non-response . . . , or consistent tardiness in complying with court orders." <u>Adams,</u> 29 F.3d at 874.

We are constrained to find that the fourth <u>Poulis</u> factor–whether the conduct of the party or the attorney was willful or in bad faith–also cuts against the plaintiff in this case. In this setting we must assess whether this conduct reflects mere inadvertence or willful conduct, in that it involved "strategic," "intentional or self-

serving behavior," and not mere negligence. Adams v. Trs. of N.J. Brewery Emps.' Pension Trust Fund, 29 F.3d 863, 875 (3d Cir.1994). At this juncture, when the plaintiff has failed to comply with instructions of the Court directing the plaintiff to take specific actions in this case, and has ignored his obligations to respond timely to discovery requests and to otherwise develop his case in accordance with an already enlarged case management schedule, the Court is compelled to conclude that the plaintiff's actions are not accidental or inadvertent but instead reflect an intentional disregard for this case and the Court's instructions.

While Poulis also enjoins us to consider a fifth factor, the effectiveness of sanctions other than dismissal, cases construing Poulis agree that in a situation such as this case, where we are confronted by a *pro se* litigant who will not comply with the rules or court orders, lesser sanctions may not be an effective alternative. See, e.g., Briscoe v. Klaus, 538 F.3d 252, 262-63 (3d Cir. 2008); Emerson, 296 F.3d at 191. This case presents such a situation where the plaintiff's status as a *pro se* litigant severely limits the ability of the court to utilize other lesser sanctions to ensure that this litigation progresses in an orderly fashion. In any event, by entering our prior orders, and counseling the plaintiff on his obligations in this case, we have endeavored to use lesser sanctions, but to no avail. The plaintiff still declines to obey court orders, and otherwise ignores his responsibilities as a litigant. Since lesser

sanctions have been tried, and have failed, only the sanction of dismissal remains available to the Court.

Finally, under <u>Poulis</u> we are cautioned to consider one other factor, the meritoriousness of the plaintiff's claims. In our view, however, consideration of this factor cannot save this plaintiff's claims, since the plaintiff is now wholly non-compliant with his obligations as a litigant. Put simply, the plaintiff cannot refuse to address the merits of his claims, and the untested merits of the non-compliant plaintiff's claims, standing alone, cannot prevent imposition of sanctions.

In any event, as discussed below, upon consideration of the defendant's motion for summary judgment, and the evidence that has been offered in support of his motion without any challenge by the plaintiff, we find that the motion for summary judgment should also be granted on its merits.

### B.    <u>Summary Judgment</u>

#### 1.    <u>Rule 56–The Legal Standard</u>

The defendant has, in the alternative to dismissal, moved for judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. Rule 56(a). Through summary adjudication a court is empowered to

dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment

is appropriate.  <u>Celotex</u>, 477 U.S. at 322.  Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. <u>Anderson</u>, 477 U.S. at 249.  There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts.  <u>Id.</u> at 252; <u>see</u> <u>also</u>, <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion."  <u>A.W. v. Jersey City Pub. Schs.</u>, 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist.  Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist.  Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment."  <u>Countryside Oil Co., Inc. v. Travelers Ins. Co.</u>, 928 F.Supp. 474, 482 (D.N.J.1995).  This rule applies with particular force to parties who attempt to rely upon hearsay statements to establish material issues of fact which would preclude summary judgment.  With respect to such claims, it is well-settled that:  "In this circuit, hearsay statements can be considered on a motion for summary judgment [only] if they are capable of admission

at trial." <u>Shelton v. University of Medicine & Dentistry of N.J.</u>, 223 F.3d 220, 223, n.2 (3d Cir. 2000), citing <u>Stelwagon Mfg. v. Tarmac Roofing Sys., Inc.</u>, 63 F.3d 1267, 1275, n.17 (3d Cir. 1995). In this regard it has been aptly observed that:

> It is clear that when considering a motion for summary judgment, a court may only consider evidence which is admissible at trial, and that a party can not rely on hearsay evidence when opposing a motion for summary judgment. <u>See</u> <u>Buttice v. G.D. Searle & Co.</u>, 938 F.Supp. 561 (E.D.Mo.1996). Additionally, a party must respond to a hearsay objection by demonstrating that the material would be admissible at trial under an exception to hearsay rule, or that the material is not hearsay. <u>See</u> <u>Burgess v. Allstate Ins. Co.</u>, 334 F.Supp.2d 1351 (N.D.Ga.2003). The mere possibility that a hearsay statement will be admissible at trial, does not permit its consideration at the summary judgment stage. <u>Henry v. Colonial Baking Co. of Dothan</u>, 952 F.Supp. 744 (M.D.Ala.1996).

<u>Bouriez v. Carnegie Mellon Univ.</u>, No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005). Thus, a party may not rely upon inadmissible hearsay assertions to avoid summary judgment. Therefore, where a party simply presents inadmissible hearsay declarations in an attempt to establish a disputed material issue of fact, courts have typically rebuffed these efforts and held instead that summary judgment is appropriate. <u>See, e.g.</u>, <u>Synthes v. Globus Medical, Inc.</u>, No. 04-1235, 2007 WL 2043184 (E.D.Pa. July 12, 2007); <u>Bouriez v. Carnegie Mellon Univ.</u>, No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005); <u>Carpet Group Int'l v. Oriental Rug Importers Assoc., Inc.</u>, 256 F.Supp.2d 249 (D.N.J. 2003).

Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F. App'x 896, 899 (3d Cir. 2007)(citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. Of Newark NJ v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982), see Sunshine Books, Ltd. v. Temple University, 697 F.2d 90, 96 (3d Cir. 1982)." [A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985)(citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

Finally, a party who seeks to resist a summary judgment motion must also comply with Local Rule 56.1, which specifically directs a party opposing a motion for summary judgment to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be

served by the moving party will be deemed to be admitted." L.R. 56.1. Under the Local Rules, the failure to follow these instructions and appropriately challenge the material facts tendered by the defendant means that those facts must be deemed, since:

> A failure to file a counter-statement equates to an admission of all the facts set forth in the movant's statement. This Local Rule serves several purposes. First, it is designed to aid the Court in its determination of whether any genuine issue of material fact is in dispute. Second, it affixes the burden imposed by Federal Rule of Civil Procedure 56(e), as recognized in Celotex Corp. v. Catrett, on the nonmoving party 'to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, *designated specific facts showing that there is a genuine issue for trial*.' 477 U.S. 317, 324 (1986) (internal quotations omitted) (emphasis added).

Doe v. Winter, No. 04-CV-2170, 2007 U.S. Dist. LEXIS 25517, *2 n.2 (M.D. Pa. Apr. 5, 2007) (parallel citations omitted; court's emphasis). A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. See Sanders v. Beard, No. 09-CV-1384, 2010 U.S. Dist. LEXIS, *15 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, No. 02-CV-01854, 2006 U.S. Dist. LEXIS 64347, *11 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

## 2.     **Summary Judgment is Warranted**

In accordance with the foregoing well-settled standards governing summary judgment practice in federal civil litigation, it is clear that the instant action is now subject to summary disposition because the plaintiff has come forward with no factual evidence in support of his claims.

As the defendants observe, as a federal court sitting in diversity, this Court must apply Pennsylvania substantive law to the plaintiff's claims.  Erie v. Tompkins, 604 U.S. 64, 78 (1938).  Pennsylvania law distinguishes between legal malpractice claims arising in civil and criminal representations.  Compare Storm v. Golden, 538 A.2d 61, 64 (Pa. Super. Ct. 1988) (civil) with Slaughter v. Rushing, 683 A.2d 1234 (Pa. Super. Ct. 1996) (criminal).  In a claim of malpractice in civil representation, such is at issue in this case, a plaintiff must prove "(1) the employment of the attorney or other basis for duty; (2) the failure of the attorney to exercise ordinary skill and knowledge; and (3) that such negligence was the proximate cause of damage to the plaintiff."  Storm, 538 A.2d at 64 (citing Trice v. Mozenter, 515 A.2d 10 (Pa. Super. Ct. 1986) and Schenkel v. Monheit, 405 A.2d 493, 494 (Pa. Super. Ct. 1979)).

In order to establish the second element – the failure to exercise ordinary skill and knowledge – a plaintiff must establish the standard of ordinary skill and knowledge.  It is only where the issue "is simple, and the lack of skill obvious" that

"the ordinary experience and comprehension of lay persons" can establish the standard of care.  See Rizzo v. Haines, 555 A.2d 58, 66 (Pa. 1989) (citing Lentino v. Fringe Employee Plans, Inc., 611 F.2d 474, 481 (3d Cir. 1979)).  The kinds of cases in which the standard of care is so evident as to not require expert testimony may include where an attorney misses a filing deadline or allows a statute of limitations to expire, Storm, 538 A.2d at 64; failure of counsel to investigate and inform a client of settlement offers, Rizzo, 555 A.2d at 66-67; or where a lawyer engages in financial transactions with a client, id. at 67.  However, where the legal claims require a jury to determine "[w]hether an attorney failed to exercise a reasonable degree of care and skill related to common professional practice" this will involve "a question of fact outside the normal range of the ordinary experience of laypersons." Storm, 538 A.2d at 65; see also id. at 64 ("By its very nature, the specific standard of care attributed to legal practitioners necessitates an expert witness' explanation where a jury sits as the fact finder.").

Review of the allegations in the amended complaint makes clear that the claims of malpractice being advanced require expert testimony.  For example, in Count I of the Amended Complaint the plaintiff alleges that Mr. Weiss "failed to represent plaintiff competently and to the best of his abilities," and that his alleged failure to do so was "in violation of the rules and standards governing attorneys in the

Commonwealth of Pennsylvania." (Doc. 20, Am. Compl. ¶ 45.) We agree with the defendant that in accordance with the law in this field, these broad allegations of malpractice, and asserted violations of the rules of professional conduct, require expert testimony in order to educate a jury regarding the prevailing rules and standards governing the practice of Pennsylvania lawyers, and to show how Mr. Weiss allegedly fell short of these standards.

Turning to Count II of the Amended Complaint, the plaintiff has alleged that Mr. Weiss "failed to exercise the degree of skill and knowledge which would normally be exercised by members of the legal profession under the same or similar circumstances." (Id. ¶ 48.) This broad claim of malpractice, and its clear invocation of the "skill and knowledge" that is "normally exercised by members of the legal profession" in like circumstances also calls upon the testimony of an expert in order to inform the jury about what the level of skill and knowledge is typically expected of Pennsylvania lawyers in loan transactions such as that at issue here.

Having found that the plaintiff would necessarily have been required to produce expert testimony in order to establish his claims, his failure to do so is necessarily fatal to his claims at this stage, and his inability to carry his burden of proving his claims compels a finding that summary judgment is warranted.

The plaintiff has similarly failed to come forward with substantive evidence that would be sufficient to support his malpractice claims against the defendant. We previously observed that the "plaintiff must initially establish by a preponderance of the evidence that he would have prevailed in the underlying action before reaching the attorney's alleged failure to exercise ordinary skill and knowledge. Thus, '[i]t is only after the plaintiff proves that he would have recovered a judgment in the underlying action that the plaintiff can proceed with proof that the attorney he engaged to prosecute or defend the underlying action was negligent.'" (Doc. 19, at 17-18) (quoting Kituskie v. Corbman, 714 A.2d 1027, 1030 (Pa. 1998)). In this case, the plaintiff has not adhered to this guidance, and has in fact made no record of any kind in support of his claims.

In this regard, we observe that in response to the defendant's motion, the plaintiff has come forward with no documents to show or prove his theory regarding the alleged applicability of New York law, or the effect it would have had in the underlying matter. Likewise, the plaintiff has not submitted any evidence or expert opinion testimony to show that if Mr. Weiss had made certain other arguments, or filed other petitions or motions, the judgment entered against the plaintiff would thereafter have been vacated or otherwise set aside. Additionally, the plaintiff has offered nothing other than his own allegations that he was unaware of the outcome

of the underlying petition until his New York counsel "demanded" to be provided with a copy of the opinion of the Pennsylvania Superior Court. In summary, there is no record evidence to support any of the plaintiff's claims of malpractice, or his overarching suggestion that if only Mr. Weiss had made certain unspecified legal arguments he had agreed to make, the plaintiff would have avoided incurring any guaranty obligations. There being no evidence that Mr. Weiss agreed to make any such arguments, or to show that if he had made these arguments the plaintiff would have prevailed in his efforts to avoid the guaranty obligations he assumed, summary judgment is now warranted.

The plaintiff has, to be sure, filed a very modest two-page response to the defendant's motion, but the response offers nothing of substance, and instead relies on the plaintiff's mistaken understanding that his allegations alone are sufficient to preclude summary judgment in this case, or otherwise suggests that certain rules of New York state civil practice have some impact on the well-settled rules of federal civil procedure governing this action and the pending motion. (Doc. 54)

We perceive no conceivable way in which a rule of New York practice relating to the pleading standards in that state's courts has any relevance to this matter. Moreover, as we have endeavored to explain, at the summary judgment stage, the plaintiff must come forward with *evidence* to support his allegations; whereas the

defendant's earlier motion to dismiss tested only the legal sufficiency of the complaint itself, the pending motion for summary judgment involves an assessment of the legal sufficiency of the claims made in the Amended Complaint, and this assessment demands that there be evidentiary support for those claims. The plaintiff's mere amplification of the allegations he made in Amended Complaint is insufficient, and summary judgment is now warranted.[4]

Furthermore, we can find no indication that Javaid has filed a proper certificate of merit in this professional malpractice case. This, too, is a material omission since in order to present a *prima facie* case of professional malpractice under Pennsylvania law a plaintiff has the burden of presenting expert opinions that the alleged act or

---

[4] In this case, the only evidence before the Court comes from the defendant, who filed a statement of undisputed material facts in accordance with Local Rule 56.1. (Doc. 52.) Local Rule 56.1 provides that:

> The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement [filed by the moving party], as to which it is contended that there exists a genuine issue to be tried . . . . All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

LR 56.1. The plaintiff's failure to file a counterstatement of facts, or even to respond to the defendant's statement, causes the defendant's statement of facts to be deemed admitted.

omission of the professional fell below the appropriate standard of care in the community, and that the negligent conduct caused the injuries for which recovery is sought. This requirement is imposed upon malpractice plaintiffs like Boring by Pennsylvania Rule of Civil Procedure 1042.3 which requires the filing a valid certificate of merit along with this malpractice claim.

Pa.R.C.P. No. 1042.3 ("Rule 1042.3") provides in pertinent part:

Rule 1042.3. Certificate of Merit

(a) In any action based upon an allegation that a licensed professionals deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either

(1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or

(2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or

(3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

The requirements of Rule 1042.3 are deemed substantive in nature and,

therefore, federal courts in Pennsylvania will apply these prerequisites of Pennsylvania law when assessing the merits of a professional malpractice claim. Liggon-Reading v. Estate of Sugarman, 659 F.3d 258 (3d Cir. 2011); Iwanejko v. Cohen & Grigsby, P.C., 249 Fed.Appx. 938, 944 (3d Cir.2007); Ramos v. Quien, 631 F. Supp. 2d 601, 611 (E.D. Pa. 2008); Stroud v. Abington Memorial Hosp., 546 F.Supp.2d 238, 248 (E.D.Pa.2008) (noting that Pennsylvania federal courts "have uniformly held that the COM requirement is a substantive rule of law that applies in professional liability actions proceeding in federal court"). These requirements also expressly apply to legal malpractice claims like those made here by Javaid. Liggon-Reading v. Estate of Sugarman, 659 F.3d 258 (3d Cir. 2011). Thus, to the extent that Javaid wishes to bring a malpractice action, his apparent failure over the past two years to comply with Rule 1042.3 is a bar to this claim. In this regard, the controlling legal standards can be simply stated:

> Under Pennsylvania law, "[a] certificate of merit must be filed either with the complaint or within sixty days after the filing of the complaint in any action asserting a professional liability claim 'based upon the allegation that a licensed professional deviated from an acceptable professional standard.'" Smith v. Friends Hospital, 928 A.2d 1072, 1074-75 (Pa.Super.Ct.2007) (quoting PA. R. CIV. P. 1042.3). Federal courts have found that this rule constitutes state substantive law and thus applies in federal courts in Pennsylvania pursuant to Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). See Scaramuzza v. Sciolla, 345 F.Supp.2d 508, 510 (E.D.Pa.2005) (citing Chamberlain v. Giampap, 210 F.3d 154, 158-61 (3d Cir.2000), which

held that an analogous New Jersey statute was substantive law); Velazquez v. UPMC Bedford Mem'l Hosp.., 328 F.Supp.2d 549 (W.D.Pa.2004). Courts may dismiss cases when a plaintiff fails to file a required certificate of merit. See, e.g., Stroud v. Abington Mem. Hosp., 546 F.Supp.2d 238, (E.D.Pa.2008); Bresnahan v. Schenker, 498 F.Supp.2d 758, 762 (E.D.Pa.2007); McElwee Group, LLC v. Mun. Auth. of Elverson, 476 F.Supp.2d 472, 475 (E.D.Pa.2007) (holding that "failure to submit the certificate is a possible ground for dismissal by the district court, when properly presented to the court in a motion to dismiss).

Brownstein v. Gieda, No. 08-1634, 2009 WL 2513778, *3 (M.D.Pa. Aug. 13, 2009).

This requirement of state law applies with equal force to counseled complaints, and to *pro se* medical malpractice actions brought under state law. See Hodge v. Dept. of Justice, 372 Fed. App'x 264, 267 (3d Cir. 2010) (affirming district court's dismissal of medical negligence claim for failure to file COM); Iwanejko v. Cohen & Grigsby, P.C., 249 F. App'x 938, 944 (3d Cir. 2007); Levi v. Lappin, No. 07-1839, 2009 WL 1770146 (M.D. Pa. June 22, 2009). Therefore, Javaid's status as a *pro se* litigant cannot excuse him from compliance with the substantive state law when bringing this state law claim of malpractice. Id.

A certificate of merit must affirmatively demonstrate "either that (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm,

or ... (3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim." <u>Bresnahan v. Schenker</u>, 498 F. Supp. 2d 758, 761-62 (E.D. Pa. 2007). Therefore, where a purported certificate of merit merely recites that the plaintiff possesses knowledge of his case, that filing does not comply with Rule 1042.3, and the plaintiff's malpractice claim may be subject to dismissal. <u>Id</u>. Similarly, a plaintiff may not satisfy Rule 1042.3 by merely acknowledging the requirement of the rule and promising to comply at some future time. <u>Donnelly v. O'Malley & Langan, P.C.</u>, 3:CV-08-1945, 2009 WL 3241662 (M.D. Pa. Oct. 2, 2009) <u>aff'd as modified sub nom.</u> <u>Donnelly v. O'Malley & Langan, PC</u>, 370 F. App'x 347 (3d Cir. 2010). Furthermore, a pleading which simply parrots the language of Rule 1042.3 without any further substantive content is inadequate, and cannot save a malpractice claim from dismissal. <u>Rodriguez v. Smith</u>, CIV.A.03-3675, 2005 WL 1484591 (E.D. Pa. June 21, 2005)(dismissal without prejudice where plaintiff files certificate that parrots Rule 1042.3 and concedes in the certificate that a licensed professional has not yet supplied the written statement required under Rule 1042.3(a)(1)).

Given the substantive nature of this requirement under Pennsylvania law, its clear application to medical malpractice claims, and Javaid's current failure to fully comply with the rule, this malpractice claim must be dismissed since, "[w]hen a

plaintiff has failed to submit a certificate or merit or otherwise indicated that he has retained an expert witness, it is appropriate for a federal district court to dismiss his professional malpractice claim without prejudice.  See Lopez v. Brady, Civil No. 4:CV-07-1126, 2008 WL 4415585, at *14 (M.D.Pa. Sept.25, 2008) (dismissing FTCA medical malpractice claim without prejudice); Henderson v. Pollack, Civil No. 1:CV-07-1365, 2008 WL 282372, at *5 (M.D.Pa. Jan.31, 2008) (dismissing state law medical malpractice claim); Hartman v. Low Sec. Correctional Ins. Allenwood, No. 4:CV-04-0209, 2005 WL 1259950, at *5 (M.D.Pa. May 27, 2005) (same)." Donnelly v. O'Malley & Langan, P.C., 3:CV-08-1945, 2009 WL 3241662 (M.D. Pa. Oct. 2, 2009) aff'd as modified sub nom. Donnelly v. O'Malley & Langan, PC, 370 F. App'x 347 (3d Cir. 2010).

IV.   **ORDER**

As we have tried to explain in this memorandum, the Court has taken pains to give the plaintiff every reasonable opportunity to present and support his claims of legal malpractice presented in this action.  Despite our efforts, and the considerable latitude that the defendant and the Court have extended to the plaintiff throughout this matter, it is now clear that the plaintiff has no evidence to support his claims, and that he has fallen short of what is required of a litigant to prosecute his claims in federal court, and summary judgment is now warranted.  Therefore, for the reasons explained

above, IT IS HEREBY ORDERED THAT the defendant's motion for summary judgment is GRANTED. The Clerk of Court shall enter judgment in favor of the defendant and close the case.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge